J-A08031-21

2021 PA Super 109

| TRI-STATE AUTO AUCTION, INC. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GLEBA, INC. AND SHIPLEY ENERGY | : | |
| | : | |
| | : | No. 1846 EDA 2020 |
| APPEAL OF: GLEBA, INC. | : | |

Appeal from the Judgment Entered September 1, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): No. 2016-06133

BEFORE: PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED MAY 26, 2021**

Gleba, Inc. ("Gleba") appeals from the judgment entered on September 1, 2020, in the Court of Common Pleas of Montgomery County following a non-jury trial in a declaratory judgment action filed by Tri-State Auto Auction, Inc. ("Tri-State").[1] This matter involves a dispute over a non-residential lease, including a provision related to a right of first refusal to purchase property, entered between Tri-State, as lessor, and Gleba, as lessee. After a careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] We note Tri-State named Shipley Energy ("Shipley"), who sublet a portion of the leased premises at issue from Gleba, in the declaratory judgment complaint and sought a declaration as to whether Shipley was required to vacate the premises. However, Shipley vacated the premises on June 4, 2016, and there is no dispute that Shipley is no longer involved in this matter.

The trial court has aptly set forth the relevant facts and procedural history, in part, as follows:

Both Tri-State and Gleba are Pennsylvania corporations with their registered offices in Montgomery County. (Joint Stipulation of Facts--Declaratory Judgment Action Only ("Joint Stipulation"), filed 7/24/17, at 1). Tri-State is the title owner of an approximately 5.4 acre parcel of improved land located at 538 Swedeland Road ("538 Swedeland"), Upper Merion Township, Montgomery County ("the Premises"). (*Id.*; N.T., 8/14/17, at 18). COBOCO, LP ("COBOCO") is a limited partnership formed with Tri-State as the general partner and the two individual principals of Tri-State as the limited partners. (*Id.* at 19). COBOCO owns a contiguous, approximately five (5) acre parcel of improved land located at 504 Swedeland Road ("504 Swedeland"), Upper Merion Township, Montgomery County. (*Id.*; Joint Stipulation at 4). The COBOCO property at 504 Swedeland has no street frontage and access is limited to a small driveway that is an easement across the Premises at 538 Swedeland. (N.T., 8/14/17, at 21).

Tri-State owned and operated an automobile auction company and used the entire ten (10) acres of the two (2) parcels to operate the business. ([*Id.*] at 19-20). Once Tri-State stopped [its] automobile auction business in 2008, [its] goal was to eventually sell the parcels. (*Id.* at 25).

In December 2010, Tri-State, as lessor, leased the Premises at 538 Swedeland to Gleba, as lessee, pursuant to a lease with a Rider and a subsequent addendum ("the Lease"). (Joint Stipulation at 1-2, Exhibit A). David W. Bowe, President, and Jerome J. Combs, Secretary, signed the Lease on behalf of Tri-State[,] and Walter C. Gleba, President and Secretary, signed on behalf of Gleba. (*Id.*) Counsel for Gleba, including John D. Maida, Esquire ("Attorney Maida"), drafted the Lease without speaking to [c]ounsel for Tri-State. (N.T., 8/14/17, at 24-25, 58-60). [Specifically, there was no direct communication between Mitchell Russell, Esquire on behalf of Tri-State, and Attorney Maida, counsel for Gleba.] Although Attorney Russell provided comments regarding a draft of the [L]ease to his client, Tri-State, he did not participate in the negotiation of the Lease. ([*Id.*] at 24-25).

The Lease is a fully integrated instrument setting forth all of the provisions thereof. (Joint Stipulation at 3). Paragraph (k) of the Rider provides as follows:

The Lessee shall have the right to extend the term of this Lease, for two additional terms of two (2) additional years each by notifying the Lessor of the Lessee's election to exercise such right at least three (3) months prior to the expiration of the then current term of this Lease provided that at the time of the exercise of such right and at the time of such renewal, the Lessee shall not be in default in the performance of any of the terms, covenants, or conditions herein contained, and that this Lease shall not have been terminated prior to the commencement of such extended term. Lessee's minimum annual rent during the option terms shall be increased to $1,800.00 per month during the first option lease term and to $1,900.00 per month during the second option lease term. Notwithstanding the foregoing and with respect to the entire term of this lease (initial and renewal), Lessor shall have the right to terminate this lease at any time during any term upon ninety (90) days prior written notice of termination to Lessee and payment to Lessee of a termination fee of $100,000.00.

(Joint Stipulation Exhibit A, Rider to Lease, at 2).

Paragraph (p) of the Rider provides:

Lessor hereby grants Lessee a right of first refusal to purchase the leased premises for the purchase price to be determined as herein set forth; such right of first refusal shall exist upon the occurrence of either of the following events only:

1. Any attempted transfer of Premises, whether voluntary or involuntary, by operation of law or otherwise, including but not limited to, all executions or legal processes attaching Premises and all processes affecting the interest of Lessor therein; or

2. The receipt by Lessor of a *bona fide* offer from a third party legally entitled to purchase Premises, which offer Lessor desires to accept.

Immediately upon the occurrence of any of the events herein before set forth, the Lessor shall send written notice by certified mail to the Lessee of such fact. If Lessor desires to sell Premises as a result of a *bona fide* offer, such written notice shall contain the name,

address and qualifications of the person who made the offer and all of the terms of such offer. During the period that shall begin with the occurrence of such event and shall end thirty (30) days after such written notice is given, the Lessee shall have the right to exercise its option to purchase the Premises upon any terms and conditions that are more beneficial to the Lessor than those set forth in the offer to purchase so presented. If Lessee does not exercise its option to purchase Premises or waives such right in writing, this option shall terminate and be of no further force and effect. If any event occurs pursuant to which Lessee may exercise its option to purchase Premises and it fails to so exercise its option to purchase Premises, within the allocated time, said option to purchase Premises shall terminate; provided, however, in the event a proposed transfer or sale is not consummated in accordance with the price and on the terms set forth in the notice sent to Lessee as required hereby, the Lessor shall not be entitled to sell Premises unless re-offered to Lessee under the terms of this Agreement at any different price and/or on any different terms. Moreover, if the Premises is not sold pursuant to the notice within six (6) months after the notice is given, the Premises may not be sold unless re-offered pursuant to this Agreement.

Any notice required to be given hereunder or any exercise of an option granted herein must be made in writing, sent by either registered or certified mail, return receipt requested and addressed as required by the Lease.

(Joint Stipulation Exhibit A, Rider to Lease, at 3-4).

Even prior to Gleba expressing an interest in leasing 538 Swedeland, and at all times material hereto, there had been a "For Sale" sign located on the Premises and the COBOCO parcel (together "the Sale Properties")[,] as they were jointly offered for sale. (Joint Stipulation at 4; N.T., 4/19/18, at 22-25). At one time, the Sale Properties were jointly offered for sale for the sum of $3,750,000.00. (Joint Stipulation at 4; N.T., 4/19/18, at 65, 77). Tri-State never offered the Premises for sale as a parcel separate and apart from the Sale Properties. (Joint Stipulation at 4; N.T., 8/14/17, at 29; N.T., 4/19/18, at 41-43).

- 4 -

In 2014, Tri-State received a letter of intent from an affiliate of O'Neill Properties, 508 Swedeland Road Associates, LP, regarding their interest in the purchase of the Sale Properties. (Joint Stipulation at 4; N.T., 8/14/17, at 27; Joint Exhibit 2). At Attorney Russell's direction, Jerome Combs, representing Tri-State, met with Walter Gleba in that time period to discuss what Tri-State believed to be the basic terms of an offer acceptable to Tri-State on the Sale Properties to ascertain whether Gleba had an interest under the right of first refusal to purchase the property. (Joint Stipulation at 4; N.T., 8/14/17, at 30). Attorney Russell subsequently received a call from Attorney Maida informing him that Attorney Maida believed it was premature to discuss a right of first refusal because there was no agreement of sale in place. (N.T., 8/14/17, at 30).

The 508 Swedeland Road Associates letter of intent was reduced to a purchase agreement dated April 24, 2014. (Joint Stipulation at 4). Attorney Russell sent a letter dated May 2, 2014, to Mr. Gleba outlining the terms of an agreement of sale for the purchase of the Sale Properties. (N.T., 4/19/18, at 99; May 2, 2014, Letter, Exhibit D-4). In that May 2, 2014, letter to Mr. Gleba, Attorney Russell misidentified the property subject to the agreement of sale as solely 538 Swedeland Road when, in fact, Attorney Russell intended to reference the entire approximately ten (10) acres to include the 504 Swedeland Road property. (N.T., 4/19/18, at 99-100).

Attorney Russell forwarded the full terms of the agreement to Attorney Maida on May 2, 2014, stating that Gleba would have thirty (30) days to exercise or waive the right of first refusal. (N.T., 8/14/17, at 30-31). In a letter dated May 15, 2014, Attorney Maida stated, in part, "[b]ased on what has been sent to me to date (your letter and the AOS), my client cannot and has no obligation in my opinion to make any decision or exercise any option since the contradictions in your letter notice and the AOS are so material as to render both notices a nullity." (Exhibit P-2, Letter to Tri-State from John D. Maida dated May 15, 2014, at 2). Attorney Maida also stated "[b]ecause your letter and the AOS so greatly differ, I must advise my client that, in my opinion, the differences of your letter as compared to the AOS demonstrate a bad faith effort to frustrate my client's right of first refusal and an attempt to force it to purchase a contiguous property in which it has no interest." (*Id.* at 3).

Following an exchange of correspondence, Tri-State understood Gleba's position to be that a property constructed offer

that would give rise to Gleba's obligation to exercise or waive the right of first refusal would need to be limited to the leased Premises alone[,] and that if Tri-State attempted to sell the leased Premises in any manner outside of that understanding, Gleba would take legal action. (N.T., 8/14/17, at 35-36).

The April 24, 2014, purchase agreement terminated pursuant to its "due diligence" provisions. (*Id.* at 37; Joint Stipulation at 4). Once the agreement of sale with the O'Neill group expired, the issue raised by Attorney Maida in correspondence of a purchase price for both properties but a right of first refusal for only one (1) of the properties became moot. (N.T., 4/19/18, at 105). Tri-State ceased marketing of the Sale Properties at that time. (N.T., 8/14/17, at 37, 44; N.T., 4/19/18, at 66).

On advice of counsel, the Tri-State and COBOCO principals determined that it was best to wait until the [L]ease naturally expired in April of 2016 to pursue a sale of the Sale Properties. (N.T., 8/14/17, at 38). Although counsel for Tri-State received two (2) nonbinding letters of intent, dated October 2, 2015, and November 27, 2015, respectively, from a broker[2] on behalf of

_____

2 The broker, Paul French, did not have a listing agreement on the Sale Properties at the time. (N.T., 8/14/17, at 45; N.T., 4/19/18, at 74-75). Mr. French subsequently entered into a commission agreement for the Sale Properties after February 2, 2017. (N.T., 4/19/18, at 75, 94, 96-97).

_____

Thomas J. Puhl and Kristen F. Puhl [(collectively "the Puhls")], [c]ounsel determined that they never amounted to an offer and instructed the broker to inform the Puhls, as well as many other interested parties, that the Sale Properties were off the market. (N.T., 8/14/17, at 45-48; N.T., 4/19/18, at 66-67, 69-71, 73, 75, 81-83, 95). Attorney Russell did not communicate the existence of these letters or the potential interest in the Sale Properties to the principals of Tri-State at this time. (N.T., 8/14/17, at 100-01).

In early 2016, Gleba exercised its option to renew the Lease. (*Id.* at 39). As a result of Gleba's action, Tri-State made the economic decision to pay Gleba $100,000.00 to terminate the Lease early in order to market the Sale Properties as a combined parcel. (*Id.*).

On March 9, 2016, [c]ounsel for Tri-State, Michael J. Clement, Esquire ("Attorney Clement"), dispatched a letter dated March 8, 2016, by certified mail, return receipt requested, on

behalf of Tri-State ("the Letter") to Walter C. Gleba as President of Gleba, Inc. (Joint Stipulation at 2). Counsel enclosed a check payable to Gleba in the amount of $100,000.00 with the March 8, 2016, [L]etter. (*Id.*, Exhibit B). The Letter and $100,000.00 check to Gleba constituted Tri-State's notice of termination of the Lease effective June 7, 2016, pursuant to [paragraph] (k) of the Rider. Tri-State also sought "written adequate assurance" within ten (10) days that Gleba would vacate the leased Premises within ninety (90) days. (*Id.*).

The term "written adequate assurance" is not a defined term in the Lease. (Joint Stipulation at 3). Attorney Russell explained that the reasons in support of the decision to request adequate assurance from Gleba were two-fold. The first reason being the very large $100,000.00 payment made up front in light of a $1,800.00[-]a[-]month lease…before Gleba was required to vacate the premises. The second reason being the history of communication with Attorney Maida regarding the right of first refusal. (N.T., 8/14/17, at 42-43).

Gleba admittedly received the [March 8, 2016,] Letter on March 13, 2016. (Joint Stipulation at 2). Attorney Clement's office also mailed a copy of the Letter to Gleba's [c]ounsel, Attorney Maida, on March 8, 2016. (Complaint, filed 3/30/16, at ¶ 11; Answer, filed 4/22/16, at ¶ 11; Exhibit B). Counsel for Tri-State sent two (2) emails to [c]ounsel for Gleba seeking a response, on March 21, 2016, and March 22, 2016, respectively. (Complaint at ¶ 12, Exhibit C; Answer, filed 4/22/16, at ¶ 12). Because Gleba failed to respond with an assurance, Tri-State filed a Complaint in Declaratory Judgment on March 30, 2016. (Complaint at ¶ 15). In the Complaint, Tri-State requested a declaration that the [L]ease terminated effective June 7, 2016. (*Id.* at ¶ 17). Tri-State sought a determination regarding the parties' respective rights and obligations by requesting a clear judicial indication as to when Gleba must vacate the Premises as required by the Lease. (*Id.* at ¶¶ 18, 19).

Gleba filed an Answer with New Matter on April 22, 2016, and Tri-State filed an Answer to the New Matter on May 5, 2016. In the New Matter, Gleba avers "no controversy exists as to the provisions of an integrated Lease," that Tri-State's "Letter Notice…is a nullity and of no import to the instant action in that it does not conform to the provisions of the Lease," that Tri-State "violated Gleba's right of first refusal set forth in the Lease," and "[b]y the terms of the Lease, Gleba's right of first refusal is binding upon Plaintiff until the actual termination of the Lease." (Answer

- 7 -

with New Matter at ¶¶ 3, 14, 17, 18). In response to Gleba's New Matter, Tri-State asserted, *inter alia*, that its "Letter Notice conforms to the provisions of the Lease which require a tender of One Hundred Thousand Dollars ($100,000.00) by Landlord for the early termination of the Lease," "Lessor has not received a *bona fide* offer from a third party legally entitled to purchase the Premises, which offer Lessor desires to accept," and "Gleba's right of first refusal is a written right, specifically limited to two events only, neither of which has occurred nor will occur prior to the termination of the Lease on June 7, 2016." (Answer to Defendant Gleba, Inc.'s New Matter, filed 5/5/16, at ¶¶ 14, 17, 18).

On May 13, 2016, Tri-State's [c]ounsel sent a Letter to Gleba's [c]ounsel providing a modification of the notice and granting Gleba until June 13, 2016, to vacate the Premises. (Joint Stipulation at 3, Exhibit C). The May 13, 2016, Letter also informed Gleba that Tri-State would declare Gleba in breach of the Lease and seek monetary and exemplary damages[,] including recovery of the $100,000.00 it had paid to Gleba[,] should Gleba not vacate on or before June 13, 2016. (***Id.***; N.T., 8/14/17, at 63-65).

Gleba paid, and Tri-State accepted, all base rent due up to and including April 30, 2016. (Joint Stipulation at 3). On June 9, 2016, Gleba deposited the $100,000.00 check, which Attorney Clement had enclosed with the March 8, 2016, termination Letter. (N.T., 8/14/17, at 62-63, 65). On June 13, 2016, Attorney Maida, on behalf of Gleba[,] wrote to Attorney Clement, as counsel for Tri-State, to state, *inter alia*, that Gleba rejected the March 8, 2016, [L]etter as being of no force and/or effect; the Lease, as an integrated instrument, speaks for itself; Attorney Clement's May 13, 2016, [L]etter was accepted as adequate notice to exercise the option to terminate the Lease ninety (90) days hence, and Gleba has accepted payment of $100,000.00 in consideration of the Lease terminating on August 11, 2016. (Joint Stipulation, Exhibit D).

Gleba did not vacate the Premises by June 13, 2016, nor did Gleba vacate the Premises by August 11, 2016, as represented in Attorney Maida's June 13, 2016, Letter. (N.T., 8/14/17, at 40). Tri-State finally obtained possession of the [Premises] through a writ of possession served on July 12, 2016, with possession taken on October 13, 2016. However, Gleba did not vacate the Premises until October 28, 2016. (Joint Stipulation at 2).

In the fall of 2016, well after Gleba had cashed the $100,000.00 check and vacated the property, Tri-State instructed a broker to go back to the two parties who had previously expressed the most serious interest, O'Neill Properties and the Puhls.[3]  (N.T., 8/14/17, at 48, 50).  The principals of Tri-State and COBOCO, the broker[,] and [c]ounsel met at the end of January 2017 to discuss the two offers.  ([*Id.*] at 48, 50).

---

3 Mitchell Russell, Esquire testified at trial that Tri-State and COBOCO had hoped to go back onto the market with the property on roughly June 13, 2016, but Gleba's actions prevented that from occurring until several months later.  ([*Id.*] at 53).

---

Even though O'Neill had presented a slightly higher purchase price, the group decided to accept the Puhls' offer.  (*Id.* at 51).  Tri-State and COBOCO entered into a purchase agreement for the Sale Properties with the Puhls dated February 2, 2017, for the purchase price of $3,900,000.00.  ([*Id.*] at 12, 48-49; Joint Exhibit J-2; P-3).  Gleba has never made an offer, large or small, for any portion of the Sale Properties.  (N.T., 8/14/17, at 69).

On June 24, 2016, Tri-State filed a Complaint for Confession of Judgment along with a Praecipe for Writ of Possession Upon a Confessed Judgment seeking possession of the leased property from Gleba.  (Complaint and Praecipe for Writ of Possession, filed 6/24/16, at Docket No. 2016-13334).  Tri-State filed a Complaint for Confession of Judgment under Pa.R.C.P. 2952 on December 9, 2016, seeking unpaid rents due under the Lease together with costs, interest, and an attorney's commission. (Complaint for Confession of Judgment, filed 12/9/16, at Docket No. 2016-29319).  On May 2, 2017, by agreement of [c]ounsel, the Court consolidated the three matters under docket number 2016-06133.[4]  (Order dated May 2, 2017, docketed May 4, 2017).

---

4 Gleba subsequently filed a lawsuit against Tri-State, David Bowe, Jerome Combs, and Thomas Puhl on August 3, 2017, under docket number 2017-19677. [The trial] court granted summary judgment in favor of Tri-State, Bowe, Combs, and Puhl, and dismissed Gleba's complaint on May 10, 2019. Gleba filed two notices of appeal.  The Superior Court initially quashed the appeal at 1912 EDA 2019 but reinstated that appeal at 3200 EDA 2019.  The other appeal was docketed at 2108 EDA 2019.  [Relevantly, the Superior Court affirmed the orders granting summary judgment in favor of Tri-State, Bowe, Combs, and Puhl, and dismissing Gleba's complaint, in its entirety. ***See Gleba, Inc. v. Tri-State Auto Auction, Inc.***, 2108 and 3200 EDA 2019 (Pa.Super. filed 2/19/21) (unpublished memorandum).  Specifically, the Superior Court agreed with the trial court that Gleba's lawsuit was

barred by the doctrine of *res judicata* as it raised the same claims as those raised in the instant declaratory judgment matter. ***See id.***]

[A two-day bench trial was held regarding the Declaratory Judgment Action on August 14, 2017, and April 19, 2018]. Prior to [the trial court] taking the bench on the first day, the [p]arties presented the [trial] court with a document on Attorney Maida's caption entitled "Joint Stipulation of Facts—Declaratory Judgment Action Only," [which was] admitted as Exhibit J-1 Stipulation.

[The trial court] found Attorney Russell's testimony on direct and cross[-]examination highly credible. After Tri-State rested its case, [c]ounsel moved for a partial directed verdict on the termination of the [L]ease being proper, including the termination of the right of first refusal. (N.T., 8/14/17, at 108). Counsel for Gleba did not object procedurally to the oral motion and instead moved to dismiss the case or direct the addition of the potential buyer, Thomas Puhl[,] as an indispensable party. (***Id.*** at 109). The court reiterated what had been discussed in conference earlier in the day, that after the testimony was transcribed, the court would issue an order for [c]ounsel to file their submissions.

Counsel filed briefs on their respective motions, and the [trial] court entered its [d]ecision on January 24, 2018. Gleba filed post-trial motions on February 2, 2018, arguing that it had not had the opportunity to present its witnesses. Although the [trial] court disagreed with Gleba's position as presented, [the trial court] entered an order on March 2, 2018, opening the record in the interest of justice to proceed with Gleba's witnesses. [Also, on March 2, 2018, the trial court entered an order denying Gleba's motion *in limine* alleging the failure to join an indispensable party and oral motion to dismiss.]

On April 19, 2018, the [trial court] presided over a second day of trial. Attorney Maida started his argument in support of a motion for nonsuit by stating that at the first day of trial[, as well as pleadings filed since then and the stipulated facts,] the case went beyond what he had filed in his pretrial statement[.] Referring to the document entitled "Joint Stipulation of Facts—Declaratory Judgment Action Only," [c]ounsel then went on to state "[b]ut the stipulated facts were predicated on the consolidation of all the cases." (N.T., 4/19/18, at 4). He continued "it was stipulated as to all the cases, these are the facts which—because it was a consolidated matter." (***Id.***)

In response, Attorney Clement argued "we're here today because there is a dispute between the parties related to a [L]ease

and a right of first refusal contained within the [L]ease. And, as Mr. Maida indicated, this is a fully integrated document. My client believes the [L]ease was properly terminated. They came to this [c]ourt to have the [c]ourt confirm for them that the [L]ease was properly terminated." ([*Id.*] at 11).

The [trial] court denied Gleba's motion for compulsory nonsuit. (*Id.* at 12). Gleba then presented witnesses[:] Jerome Combs and David Bowe of Tri-State, broker Paul French[,] and Attorney Russell. While the [trial] court found all of these witnesses credible, the [trial] court specifically found Mr. French's testimony highly credible.

Trial Court Opinion, filed 10/29/20, at 1-15 (footnote omitted).

After considering all of the evidence presented at the bench trial, the court issued an Amended Decision on August 14, 2018, which contained the following relevant declarations as to Tri-State's complaint for declaratory relief:

18. In this action, [Tri-State] seeks a declaration that 1) Tri-State properly terminated the Lease; 2) Gleba's right of first refusal set forth in the Lease terminated contemporaneously with the Lease; 3) a repudiation of the Lease by Gleba occurred[;] and 4) an anticipatory breach of the Lease by Gleba occurred.

19. Th[e] [trial] court opines that the Lease is unambiguous.

20. Both [p]arties concede that the Lease contains an integration clause that is binding.

21. A fair reading of the complaint in combination with the evidence admitted at trial results in the court['s] determining that [Tri- State] properly terminated the Lease pursuant to paragraph (k) of the Lease [R]ider[,] as of Monday, June 13, 2016, by mailing the written March 8, 2016, Letter with the enclosed check in the amount of $100,000.00 by certified mail on March 9, 2016, and as admittedly received by [Gleba] on March 13, 2016.

22. The right of first refusal was contained within paragraph (p) of the Lease [R]ider also terminated as part of the Lease on or before June 13, 2016.

23. The [trial] court concludes that Gleba's actions and failure to provide what [Tri-State] terms "adequate assurance[,"] while no doubt frustrating, did not constitute an "absolute and unequivocal refusal to perform[."]

24. Therefore, the [trial] court finds for Gleba and against [Tri-State] on the claims of repudiation and anticipatory breach.

25. The [trial] court also concludes that Gleba did not vacate the Premises pursuant to the terms of the Lease, which failure constituted a breach of that Lease. The [trial] court will issue a separate order scheduling argument and a hearing, if necessary, to hear Gleba's petition to open the judgment and to assess damages including, *inter alia*, Gleba's failure to pay rent and taxes, together with costs, interest[,] and an attorney's commission, in a subsequent proceeding under docket [No.] 2016-29319, now consolidated [at No. 2016-06133].[11]

11 Paragraph 25 of the Amended Decision was [later] amended by order dated September 1, 2020, to omit the first sentence regarding the trial court's determination that Gleba's failure to vacate the Premises constituted a breach of the Lease.

26. [Tri-State's] [c]omplaint in [c]onfession of [j]udgment for possession filed under docket [No.] 2016-13334, now consolidated [at No. 2016-06133], is moot.

***Gleba, Inc. v. Tri-State Auto Auction, Inc.***, 2108 and 3200 EDA 2019, at *11-12 (Pa.Super. filed 2/19/21) (unpublished memorandum) (citing Amended Decision, filed 8/14/18, at 16-17).

On August 21, 2018, Gleba filed a timely post-trial motion,[2] and Tri-State filed a response on September 10, 2018. On September 20, 2018, before the trial court ruled on the post-trial motion, Gleba filed an appeal to

_____

2 In ***Motorists Mutual Ins. Co. v. Pinkerton***, 574 Pa. 333, 830 A.2d 958 (2003), our Supreme Court ruled that a party must file a post-trial motion if there is a trial in a declaratory judgment action, and the Court noted that an appeal lies after the motion for post-trial relief is denied.

J-A08031-21

this Court.[3]  By order entered on June 29, 2020, this Court quashed Gleba's appeal on the basis it was interlocutory.  **Gleba, Inc. v. Tri-State Auto Auction, Inc.**, 2679 EDA 2018 (Pa.Super. filed 6/29/20) (*per curiam* order).

On August 25, 2020, the trial court heard oral argument on Gleba's motion for post-trial relief, and on September 1, 2020, the trial court granted in part, and denied, in part Gleba's post-trial motion.  Specifically, as indicated *supra*, the trial court granted the motion to amend paragraph 25 of the Amended Decision.  The trial court denied Gleba's post-trial motion in all other respects and entered judgment.  This timely appeal by Gleba followed.[4]

---

[3] The trial court directed Gleba to file a Pa.R.A.P. 1925(b) statement, and Gleba timely complied.

[4] After Gleba filed the instant appeal from the entry of judgment, the trial court did not direct Gleba to file a Pa.R.A.P. 1925(b) statement, and consequently, Gleba did not file a Rule 1925(b) statement.  The trial court, however, filed a Rule 1925(a) opinion on October 29, 2020, utilizing the issues presented in Gleba's Rule 1925(b) statement, which Gleba filed with regard to the previous interlocutory appeal docketed in this Court at 2679 EDA 2018. The trial court now urges this Court to find Gleba's present appellate issues waived on the basis Gleba presented a vague, voluminous Rule 1925(b) statement.  We agree with the trial court's characterization of Gleba's Rule 1925(b) statement. *See Jiricko v. Geico Ins. Co.*, 947 A.2d 206 (Pa.Super. 2008) (noting the appellant filed an incoherent, rambling, voluminous statement in violation of Pa.R.A.P. 1925(b)).  However, the Rule 1925(b) statement to which the trial court refers was filed by Gleba specifically in connection with its previous interlocutory appeal docketed in this Court at 2679 EDA 2018.  Thus, inasmuch as the deficient Rule 1925(b) statement at issue was filed in a prior appeal, we decline to find waiver with regard to the issues raised in the instant appeal.

- 13 -

On appeal, Gleba sets forth the following issues in its "Statement of the Questions Involved" (verbatim):

1. Should Amended Decisions declaration 18, 21, and 22, as appealed, be vacated because they determine rights in anticipation of events that had not occurred or were moot?

2. Did the lower court by the Amended Decision's declarations 18, 21, and 22 improperly determine uncertainties or controversies not before the Court, as never having been pled? 42 P.S. § 7538?

3. By awarding supplemental relief in the Amended Decision's declarations 18, 21, and 22, did the lower court commit reversible error because the issues therein posed may only have been adjudicated and sufficiently heard with Thomas Puhl as an additional party?  If so, absent Appellee joining Thomas Puhl as an additional party, did the lower court and now this Court lack subject matter jurisdiction as mandated by Rule the Act? 42 P.S. § 7540[?]

4. Did the lower court's granting of "supplemental relief" in declarations 18, 21, and 22 of the Amended Decision, constitute reversible error because Appellant, Gleba, Inc. was not afforded notice, as required by 42 P.S. § 7540, to show cause why such supplemental declarations should not be granted?

5. Was supplemental relief granted in declarations 18, 21, and 22 of the Amended Decision, including but not limited to terminating Gleba's right of first refusal, reversible error, in light of Judge Rogers' determining that Thomas Puhl's Agreement of Sale to purchase the Premises, was insufficient to prove he was an indispensable party, per 42 P.S. § 7540?

Gleba's Brief at xii-xiii (footnotes, bold, and suggested answers omitted).[5]

Before examining the merits of Gleba's issues, we admonish Gleba for its lack of compliance with our Rules of Appellate Procedure.  Although Gleba

---

[5] We note Gleba misnumbered its questions as 1, 2, 3, 6, and 7.  We have corrected the numbering as 1, 2, 3, 4, and 5.

sets forth five issues for our review in its "Statement of the Questions Involved," the argument portion of its brief contains only one section, in violation of Rule 2119(a). **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein….").

Moreover, we note that significant portions of Gleba's single argument section contain rambling assertions of fact in the light most favorable to Gleba without any citation to authority or development of an appropriate argument. **See** Gleba's Brief at 24-29. Further, mid-way in the argument section, Gleba indicates its appellate issues presently before this Court are as follows (verbatim):

1. Whether, other than as stated in the Verdict, did Tri State's Complaint on the date of trial set forth any other causes of action or controversy upon which relief could have also been granted;

2. Whether Tri State's Complaint set forth causes of action upon which relief should be denied in Equity due to its unclean hands;

3. Whether Tri State's acts were fraudulent and a breach of the Lease and denied Appellant's rights and entitlements thereunder; and

4. Whether Tri State's defective Notice of Termination was inter alia a breach of Lease by Tri State invalidating the lower court's "fair reading" of the Lease termination date.

Gleba's Brief at 28-29.

The remainder of Gleba's single argument section is a combination of argument aimed at its issues as initially set forth in the "Statement of the Questions Involved" and its issues as set forth mid-way in the argument portion of the brief. *See id.* at 29-47.

In light of Gleba's clear violations of the Rules of Appellate Procedure, we could quash this appeal, as Tri-State urges this Court to do. *See* Tri-State's Brief at 28-30; *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review that claim is waived."); Pa.R.A.P. 2101 ("[I]f the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.").

However, to the extent Gleba has presented a properly developed argument in support of the claims set forth in its "Statement of Questions Involved," which challenged the trial court's August 14, 2018, Amended Decision relating to declarations 18, 21, and 22, we shall review the claims collectively.

Preliminarily, we set forth the following relevant legal precepts:

> [The Declaratory Judgment Act relevantly provides that] any person interested under a…contract, or other writings constituting a contract…may have determined any question of construction or validity arising under the instrument…and obtain a declaration of rights, status, or other legal relations thereunder.

42 Pa.C.S.A. § 7533. In order to establish a right to relief through a declaratory judgment, a plaintiff must establish a direct, substantial and present interest. **Bromwell v. Michigan Mut. Ins. Co.**, 716 A.2d 667, 670 (Pa.Super. 1998). Further, a plaintiff must demonstrate that an actual controversy exists. **Id.** "The prime purpose of the Declaratory Judgment Act is to speedily determine issues that would…be delayed, to the possible injury of those interested if they were compelled to wait the ordinary course of judicial proceedings." **Osram Sylvania Products, Inc. v. Comsup Commodities, Inc.**, 845 A.2d 846, 849 (Pa.Super. 2004) (quotation marks and quotation omitted).

> Further,
>
> [w]hen reviewing the results of a non-jury trial, we give great deference to the factual findings of the trial court. We must determine whether the trial court's verdict is supported by competent evidence in the record and is free from legal error. For discretionary questions, we review for an abuse of that discretion. For pure questions of law, our review is *de novo*.

**Recreation Land Corp. v. Hartzfeld**, 947 A.2d 771, 774 (Pa.Super. 2008) (internal citations omitted). **See Stokes v. Gary Barbera Enterprises, Inc.**, 783 A.2d 296, 297 (Pa.Super. 2001) ("When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the court is free to choose to believe all, part, or none of the evidence presented.").

Additionally, we recognize the interpretation of a lease is a question of law and this Court's scope of review is plenary. *See Szymanowski v. Brace*, 987 A.2d 717 (Pa.Super. 2009).

> [A] lease is in the nature of a contract and is controlled by principles of contract law. It must be construed in accordance with the terms of the agreement as manifestly expressed, and the accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement. Further, a party seeking to terminate a lease bears the burden of proof.

*T.W. Phillips Gas & Oil Co. v. Jedlicka*, 615 Pa. 199, 42 A.3d 261, 267 (2012) (quotation marks, quotations, and citations omitted).

> The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a [lease's] language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

*Murphy v. Duquesne University Of The Holy Ghost*, 565 Pa. 571, 777 A.2d 418, 429 (2001) (internal citations and quotation marks omitted).

Furthermore, where a written lease contains an integration clause, the lease, "if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony  nor prior written agreements, or other writings, are admissible to explain or vary the terms of the [lease]." *1726 Cherry Street Partnership v. Bell Atlantic Properties, Inc.*, 653 A.2d 663, 665 (Pa.Super. 1995) (citation omitted).

In the case *sub judice*, in addressing Gleba's challenges to the trial court's August 14, 2018, Amended Decision relating to declarations 18, 21, and 22, the trial court relevantly indicated as follows:

[Gleba challenges the trial court's determination that the Lease terminated on June 13, 2016.] The record is abundantly clear that Attorney Russell opined the [L]ease terminated ninety (90) days after Mr. Gleba received the March 8, 2016[,] [L]etter and check on March 13, 2016. Later in his testimony, Attorney Russell specifically testified that the [L]ease terminated on June 13, 2016, or approximately 90 days after March 13, 2016….Simply because [Gleba disagrees with the trial court's determination] is not an indication of bias. To the contrary, it demonstrates that the court weighed all of the evidence…in a careful, thoughtful, and unbiased manner.

\*\*\*

Gleba…[seeks] to modify paragraph 18 and strike paragraphs 21 [and] 22…of the Amended Decision. Specifically, Gleba desires a determination as to whether Tri-State properly terminated the Lease but not whether the right of first refusal terminated as part of the Lease. Gleba has conceded that the [L]ease, along with the right of first refusal, has terminated. The [p]arties disagree on the date of termination.

\*\*\*

Instantly, on the one hand, [c]ounsel for Gleba asserts that the [trial] court erred in determining that the [L]ease terminated on a date other than August 13, 2016, and on the other hand[,] [c]ounsel claims error because the court did not rule on whether it terminated as of June 7, 2016. Gleba concedes the [L]ease has terminated. Tri-State's position is that the [L]ease terminated ninety (90) days after [c]ounsel mailed the termination [L]etter and tendered the $100,000.00 check received by Gleba on March 13, 2016.

In drafting its decision, resolution of the dispute required the [trial] court to interpret, *inter alia*, the following language in the [L]ease: "Lessor shall have the right to terminate this lease at any time during any term upon ninety (90) days prior written notice of termination to Lessee and payment to Lessee of a termination fee of $100,000.00." The word "payment" alone is not defined in the [L]ease. After reviewing the evidence and the

- 19 -

law, the [trial] court interpreted the words "payment to," together in context with the remainder of the provision, to mean that Tri-State had properly terminated the [L]ease as of June 13, 2016, when it mailed the termination [L]etter dated March 8, 2016, enclosing a check for $100,000.00 to Gleba, both of which Gleba admittedly received on March 13, 2016. When Gleba actually deposited the check enclosed with the termination [L]etter is of no moment.

[Furthermore], [a]t the second day of trial, Attorney Maida submitted "it was affirmed that this case for declaratory relief was relying solely on the pleadings in that case. Does not involve the other two actions, whereas the stipulation involves them all." (N.T., 4/19/18, at 7). While the "Joint Stipulation of Facts— Declaratory Judgment Action Only" speaks for itself, the [trial] court agreed with Attorney Maida's argument that the bench trial pertained solely to the declaratory judgment pleadings. Those pleadings included Tri-State's complaint, Gleba's answer with new matter[,] and Tri-State's answer to Gleba's new matter. As previously noted, in Gleba's new matter, Gleba averred "the Plaintiff violated Gleba's right of first refusal set forth in the Lease" and "[b]y the terms of the Lease, Gleba's right of first refusal is binding upon Plaintiff until the actual termination of the Lease." (Gleba's Answer with New Matter at ¶¶ 17, 18).

The right of first refusal obtained by Gleba is a clause within the [L]ease. When the [L]ease terminated, so too did the right of first refusal. The [trial] court made a determination, as requested by the [p]arties in their pleadings, as to whether Tri-State properly terminated the [L]ease, which included a right of first refusal therein. The [trial] court made those determinations as part of its August 14, 2018[,] Amended Decision. Counsel has presented no evidence, viable argument[,] or applicable law in support of a claim that the right of first refusal somehow survived the proper termination of the [L]ease.[6]

_____

[6] We specifically note that, to the extent Gleba contends the "controversy" over the termination of the right of first refusal was an issue in anticipation of events that had not yet occurred (Issue 1 *supra*), was not an issue before the trial court (Issue 2 *supra*), or was decided without Gleba having adequate notice (Issue 4 *supra*), we find no merit. As the trial court indicated, Attorney Maida acknowledged the bench trial pertained to the Declaratory Judgment
*(Footnote Continued Next Page)*

Finally, Gleba complained in its post-trial motion that the [trial] court erroneously ruled that Gleba had breached the [L]ease based upon events which occurred after Tri-State filed its complaint. Because the [trial court] concluded that Gleba's position [in this regard] was correct, and now finally having had the opportunity to address the issue, the [trial] court modified Paragraph 25 to remove that particular ruling.

Trial Court Opinion, filed 10/29/20, at 33-34, 37-39 (footnotes and bold omitted)

We agree with the trial court's sound reasoning in this regard. We find no abuse of discretion or error of law. **See Recreation Land Corp.**, **supra**.

Finally, it bears mentioning that Gleba sets forth two issues (Issue 3 and 5) in its "Statement of the Questions Involved" pertaining to the trial court's failure to join Thomas Puhl as an indispensable party to the declaratory judgment action. We dispose of this claim simply by noting that, aside from making bald assertions of error, Gleba did not develop an argument, supported with proper citation, regarding the issue of whether Puhl was an indispensable party. **See** Gleba's Brief at 19 n. 56 (baldly asserting Puhl was an "undoubtedly theretofore an indispensable party"); 40 (baldly asserting "Puhl by both Rules of Court and the Declaratory Judgment Act, was an

_____

Action and all pleadings filed therein, including Gleba's new matter which averred Tri-State had violated Gleba's right to first refusal set forth in the Lease. Thus, a specific determination regarding whether the right of first refusal contained within the fully integrated Lease terminated upon termination of the Lease, was an issue properly before the trial court, and Gleba had adequate notice of the issue.

- 21 -

indispensable party; and, then, in turn, the lower court lacked subject matter jurisdiction and therefore the entire Amended Decision must be vacated.").

We note the "bulk" of Gleba's "argument" that Puhl was an indispensable party appears on page 21[7] of Gleba's brief as follows (verbatim):

> [E]ven though the lower court declared Puhl a dispensable party, Declarations 18, 21, and 22 of the Amended Decision were solely beneficial to Tri-State in its dealings with Puhl. Admittedly, but for the Erroneous Declarations 18, 21, and 22, Puhl may have been dispensable; in which case, however, such erroneous decisions would not have had reason to be entered. When the Court entered the Erroneous Declarations, Puhl thereby became indispensable and jurisdiction was lost; thus vacating all declarations and the case ab initio.
>
> The Erroneous Decisions are now to be deemed by Judge Rogers' Amended Decision as the law of the case (res judicata) in Gleba's independent suit against Tri-State, Puhl, Combs, and Bowe. Therefore, as this case is determined so will be the appeals filed in 2108 EDA 2019 and 3200 EDA 2019. If Puhl became in indispensable party and jurisdiction was lost in the matter before the Court; so it will be in all declarations and the entirety of this case ab initio, as well as in all other proceedings.

Gleba's Brief at 21 (footnote omitted).

Gleba's undeveloped claim without citation to authority merits no further review. *See, e.g., Commonwealth v. Johnson*, 604 Pa. 176, 985 A.2d 915, 924 (2009) (stating "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived");

---

[7] We note there are two consecutive pages, which are both numbered 21 in Gleba's brief.

***Commonwealth v. McMullen***, 745 A.2d 683, 689 (Pa.Super. 2000) (finding waiver where the argument for the issue "consists of a one paragraph 'argument' with virtually no citation to relevant statutory authority or case law").

For all of the foregoing reasons, we affirm.

Affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 5/26/2021*