J-A24007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROBERT BRENNAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JAMES STOVER | : | |
| | : | |
| Appellant | : | No. 491 MDA 2025 |

Appeal from the Judgment Entered June 24, 2025
In the Court of Common Pleas of Centre County Civil Division at No(s):
2023-0699

BEFORE:  DUBOW, J., KUNSELMAN, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED: DECEMBER 1, 2025**

James Stover ("Stover") appeals from the judgment entered by the Centre County Court of Common Pleas ("trial court") in favor of Robert Brennan ("Brennan"), granting his complaint in ejectment, ordering the parties to abide by the property survey of June 10, 2022, and directing Stover to remove the shed and flowerpot that encroach on Brennan's land.  On appeal, Stover argues that the evidence he presented at trial provided clear, credible, and definite proof of his adverse possession of the disputed portion of Brennan's land.  Because we conclude that Stover failed to establish each element of adverse possession, we affirm.

The trial court summarized the facts and procedural history of this case as follows:

> This matter is a dispute between two neighboring property owners over the use of a strip of land adjoining their properties.

[Brennan] resides at [a property located on] North East Street, Aaronsburg, Pennsylvania 16820, and [Stover] resides at [an adjacent property on] North East Street, Aaronsburg, Pennsylvania 16820. [Brennan] is the owner of approximately 16.6 acres of land, identified as Centre County Uniform Parcel Identifier Tax Parcel Number [redacted], which [he] received by deed on or about December 27, 1999. [Stover] is the owner of two tracts of land containing .420 and .582 acres, which [he] received by deed on or about June 15, 1979. [Stover] is also owner of a tract of land containing 5.794 acres, identified as Centre County Uniform Parcel Identifier Tax Parcel Number [redacted], which [he] received by deed on or about September 12, 2002.

The lands of [Brennan] and the lands of [Stover] share a common boundary line, being a portion of [Brennan]'s southern boundary line and a portion of [Stover]'s northern boundary line. *See* Ex. P-2 (Survey). [Brennan] alleges that [Stover] installed a shed and other improvements near the single-family dwelling on [Stover]'s property, which shed and improvements [Brennan] alleges encroach onto [his] land. [Brennan] avers that [Stover] has no valid, legal right to the possession of the above identified portions of the lands of [his], and [Brennan] … filed [a] complaint in ejectment asking [the trial court] to (i) grant judgment of possession of the aforesaid portion of [his] land now in the possession and control of [Stover] to [him]; (ii) direct [Stover] to remove the shed and improvements that encroach on the lands of [Brennan], at [Stover]'s expense; and (iii) require [Stover] to pay the costs of the instant suit and any relief that is just and proper.

In [Stover]'s answer, [he] admits that he installed a shed on the property that he believed to be his own and counterclaims that the shed has occupied that spot on the property openly, notoriously, and continuously since 1981 such that [he] should be granted title to the surface area of the shed as a result of adverse possession. [Brennan] denies that the shed has occupied the area of [his] property where the shed is located in an "openly, notoriously, and continuously to the exclusion of all others" fashion since 1981. At trial, [Stover] expanded the scope of the issues to cover a strip of land along the shared border of the parties' properties [that he claimed to have regularly mowed], as well as other improvements made by [him] within that now-disputed section of property; namely, a large flowerpot located

- 2 -

near the same shared border and within the disputed land described above.

Trial Court Opinion, 10/25/2024, at 1-3 (formatting modified).

Following a one-day non-jury trial held on October [3, [2024, the trial court] found in favor of [Brennan], and [Stover] was ordered to remove the shed and flowerpot that encroach on the lands of [Brennan]. Such removal was to be done at [Stover]'s expense, but the parties were otherwise ordered to pay their own costs and expenses of suit. The [trial court] expressly denied [Stover]'s adverse possession claim as it related to the footprint of the shed and flowerpot. …

[Stover] filed [a] motion for post-trial relief on November 4, 2024, asking [the trial court] to order a new trial, change or modify its October 25, 2024 decision, and/or enter a judgment notwithstanding the verdict. …

Trial Court Opinion, 3/21/2025, at 2-3 (formatting modified).

On March 21, 2025, the trial court denied Stover's post-trial motions. Stover subsequently filed a notice of appeal from the order denying his post-trial motions. On June 10, 2025, this Court issued an order informing Stover that orders denying post-trial motions are interlocutory and not ordinarily appealable, but that the subsequent entry of judgment is appealable. *See* Order, 6/10/2025; *see also Prime Medica Assocs. v. Valley Forge Ins. Co.*, 970 A.2d 1149, 1154 n.6 (Pa. Super. 2009). As a "final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction[,]" we directed Stover to praecipe the trial court to enter judgment. *Id.* The trial court entered judgment on June 24, 2025.

Stover now presents the following issues for review:

(1) Did the trial court err in finding that [Stover] offered no clear, definitive proof to establish all the elements required of a claim of adverse possession pursuant to 68 P.S. §§ 81-88; specifically, did the trial court err in determining that [Stover] did not present clear, convincing evidence to meet the "actual" and "continuous" elements of adverse possession?

(2) Did the trial court err in deciding the "hostile" element to determine [Stover]'s adverse possession of the land was questionable?

Stover's Brief at 5.

When reviewing a trial court's decision following a nonjury trial, "[w]e must determine whether the trial court's verdict is supported by competent evidence in the record and is free from legal error." *Tri-State Auto Auction, Inc. v. Gleba, Inc.*, 257 A.3d 172, 184 (Pa. Super. 2021) (citation omitted). "[W]e give great deference to the factual findings of the trial court." *Id.* (citation omitted). "For discretionary questions, we review for an abuse of that discretion" and for "pure questions of law, our review is de novo." *Id.* (citation omitted). "When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the court is free to choose to believe all, part, or none of the evidence presented." *True R.R. Assocs., L.P. v. Ames True Temper, Inc.*, 152 A.3d 324, 339 (Pa. Super. 2016) (quotation marks and citation omitted).

The issues that Stover presents on appeal challenge the trial court's decision that he failed to establish title to the disputed property by adverse possession. *See* Stover's Brief at 9-14. "Adverse possession is an

extraordinary doctrine which permits one to achieve ownership of another's property by operation of law." ***Gruca v. Clearbrook Cmty. Servs. Ass'n, Inc.***, 286 A.3d 1273, 1278 (Pa. Super. 2022) (quotation marks and citation omitted). "Claimants seeking to assert title by adverse possession have the burden to show each of the following elements: actual, continuous, exclusive, visible, notorious, distinct[,] and hostile possession of the land for twenty-one years." ***Id.*** (citation omitted); ***see also*** 68 P.S. §§ 81-88.[1] The claimant "must demonstrate each element by credible, clear, and definitive proof." ***Id.*** (quotation marks, citation, and brackets omitted). "It is a serious matter indeed to take away another's property. That is why the law imposes such strict requirements of proof on one who claims title by adverse possession." ***Edmondson v. Dolinich***, 453 A.2d 611, 614 (Pa. Super. 1982).

Stover argues that the trial court incorrectly determined that he did not establish actual, continuous, and hostile possession of the disputed property for twenty-one years. ***See*** Stover's Brief at 9-14. Specifically, he maintains that he established actual possession of the property over the course of forty years through his regular mowing and maintenance of it and that Brennan's testimony at trial corroborated this argument because Brennan admitted that he did not do anything with the land. ***Id.*** at 10-11. Stover asserts that he also established continuous possession of the land because he has had a

---

[1] Act of May 31, 1901, P.L. 352, No. 217, §§ 1-8.

clubhouse or shed occupying the disputed land for the statutory period and that his use of it has been more than merely sporadic. *See id.* at 11-12. Lastly, he contends that the trial court erred in determining that he did not satisfy the hostile possession element because he believed he owned the disputed property. *Id.* at 13-14. Stover further asserts that the hostile requirement is implied in this case because he satisfied all other elements of adverse possession. *Id.*

We begin by addressing Stover's first issue, which is dispositive of this appeal. This Court has explained that actual possession is not mere occupancy of land but requires a showing of dominion over the land. *Recreation Land Corp. v. Hartzfeld*, 947 A.2d 771, 774 (Pa. Super. 2008); *Watkins v. Watkins*, 775 A.2d 841, 846 (Pa. Super. 2001). A determination of what constitutes actual possession depends on the facts of each case "and[,] to a large extent, on the character of the premises." *Watkins*, 775 A.2d at 846. "There is no fixed rule, however, by which the actual possession of real property by an adverse claimant may be determined in all cases." *Id.*

"Further, in order for adverse possession to ripen into title, it is necessary to show that such possession has been continuous and uninterrupted for the full statutory period." *Id.* "The law does not require that the claimant remain continuously on the land and perform acts of ownership from day to day." *Brennan v. Manchester Crossings, Inc.*, 708 A.2d 815, 818-19 (Pa. Super. 1998). "A temporary break or interruption, not

of unreasonable duration, does not destroy the continuity of the adverse claimant's possession." ***Id.*** Sporadic or temporary acts, however, will not operate to give a claimant title to land under the doctrine of adverse possession. ***Johnson v. Tele-Media Co. of McKean Cnty.***, 90 A.3d 736, 741 (Pa. Super. 2014).

The trial court found that Stover failed to provide definitive proof that he had been in actual and continuous possession of the disputed property for the statutory period:

> Based on the evidence presented, the [trial court] is unable to find that [Stover] has met his burden of proving each element of adverse possession by credible, clear[,] and definitive proof. At the outset, the court notes that no party has been able to definitively identify when the [shed] in question was erected. [Stover] asserts in his answer that he has "occupied the shed openly[,] notoriously, and continuously to the exclusion of all others[,] including [Brennan,] since 1981." However, at trial, [Stover] clarified that the structure was actually a clubhouse instead of a shed, and that it was initially built in 1991. This was corroborated by testimony from [Stover]'s son. While the requisite statutory period is met regardless of if [the court found] that the structure was [built] in 1981 or 1991, the inability of [Stover] to clearly identify when the structure was erected speaks to the lack of definitive proof upon which the rest of his adverse possession claim is based.
>
> The [trial court] is also unable to find that the footprint of the shed has been occupied continuously for the statutory period. While the court heard testimony from [Stover] and [his] son that the clubhouse was replaced by the shed at some point in 2011, and that the shed was in the "exact same spot" as the clubhouse, the court has no clear physical evidence that it can rely on to definitively hold that [Stover]'s possession of the property during the statutory period was actual and continuous. Indeed, the court heard testimony from [Brennan]'s daughter that she walked the property regularly with her dog and did not see the tractor shed until 2016. In light of the conflicting accounts of the parties and

- 7 -

the absence of meaningful physical evidence, the court cannot find by credible, clear and definitive proof that [Stover]'s occupation of the area in question was actual and continuous.

Trial Court Opinion, 10/25/2024, at 4-5. (unnecessary capitalization omitted).

The record reflects that although Stover averred in his answer that his shed has occupied the disputed property since 1981, he testified at trial that a "clubhouse" occupied the land beginning in 1991. Answer, 4/26/2023, ¶ 9; N.T., 3/3/2024, at 35. Stover explained that he replaced the clubhouse with a tractor shed in 2011. N.T., 3/3/2024, at 36. He also claimed in his testimony to have been regularly mowing the disputed property for thirty-five years. *Id.* at 29-30. Although Stover presented a picture of the clubhouse that he claims occupied the disputed property starting in 1991, the photograph does not show the placement of the clubhouse, there is no date on the photograph, and a survey from 1994 shows no clubhouse or any other structure where the shed is currently located. *See* N.T., 3/3/2024, Defendant's Ex. B; Plaintiff's Ex. 11. Stover's son also testified and corroborated his father's testimony. *See* N.T., 3/3/2024, at 41-45.

Additionally, Darrell Martin ("Martin"), who had farmed and mowed portions of Brennan's property from 2005 to 2007, testified that during the times he mowed near the area of the disputed property, the area did not look like it had been recently mowed and that he never noticed a clubhouse or shed on the disputed property. *Id.* at 58-59. Furthermore, Brennan's daughter, Victoria Brennan ("Victoria"), who has lived with her father since 2008,

testified that she frequently walks her dog near the disputed property and that it never looked to her like the land had been mowed until 2016. *Id.* at 60, 65-66. She further testified that when she originally toured her father's property when he purchased it in 1999, she did not see a clubhouse or shed in the area of the disputed property. *Id.* at 74. Victoria explained that it was not until 2016, while she was walking her dog one day, that she observed that the disputed property had been cleared and that a shed had been constructed on the land. *Id.* at 66-73.

As stated above, the trial court ultimately concluded that "[i]n light of the conflicting accounts of the parties and the absence of meaningful physical evidence" relating to the date Stover constructed the shed, the court could not "find by credible, clear[,] and definitive proof that [Stover]'s occupation of the area in question was actual and continuous." Trial Court Opinion, 10/25/2024, at 5. Based on its decision, the trial court found Stover's claim that a clubhouse occupied the disputed property beginning in 1991 to lack credibility, and the record supports this determination. *See id.* The record contains a survey from 1994 that does not show a clubhouse or shed on the disputed property at that time. *See* N.T., 3/3/2024, Plaintiff's Ex. 11. Likewise, testimony from Martin and Victoria indicated that Stover had not regularly mowed the disputed property and that there was no shed on that land until sometime after 2007, which supports the trial court's conclusion

that Stover did not actually or continuously possess the land for the statutory period. *See* N.T., 3/3/2024, at 58-60, 66-74.

Based upon our review of the record, including the testimony set forth above, we find no basis to disturb the trial court's findings, as the trial court's verdict is supported by competent evidence in the record and is free from legal error. *See Tri-State Auto Auction*, 257 A.3d at 184. Stover asks this Court to reweigh the evidence the parties presented at trial in his favor, but relies on nothing in the record that would permit us to do so. He instead points to his testimony and the testimony of his son and claims that "the trial court erred when weighing the testimonies [sic]." Stover's Brief at 11. We emphasize that "[t]he trial court in a nonjury trial is free to believe all, part, or none of the testimony presented at trial, and this Court may not reweigh the evidence or substitute its judgment for that of the trial court." *Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 28 (Pa. Super. 2020). We therefore conclude that the trial court did not err in determining that Stover failed to present credible, clear, and definitive proof that he actually and continuously occupied the disputed property for the statutory period.

In light of our determination that the trial court did not err in concluding that Stover failed to establish actual and continuous possession of the disputed property for the statutory period, we need not address his arguments regarding the hostile possession element. *See Gruca*, 286 A.3d at 1278 (explaining that a claimant must establish each element to successfully obtain

title to land under adverse possession). As the record supports the trial court's conclusion that Stover failed to establish each element of the doctrine of adverse possession, we affirm the judgment in favor of Brennan.

Judgment affirmed.


Judgment Entered.


_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>12/01/2025</u>