J-A12040-25

2025 PA Super 150

| CHARLES F. ZURICK, III | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STELLA CADENTE INVESTMENTS, | : | |
| LLC | : | |
| | : | No. 2809 EDA 2024 |
| Appellant | | |

Appeal from the Order Entered October 1, 2024
In the Court of Common Pleas of Lehigh County
Civil Division at No(s):  2020-C-2399

BEFORE:  STABILE, J., DUBOW, J., and SULLIVAN, J.

OPINION BY SULLIVAN, J.:                          **FILED JULY 18, 2025**

Stella Cadente Investments, LLC ("Stella") appeals from the trial court's order granting a prescriptive easement to Charles F. Zurick ("Zurick") over a portion of its property.  We affirm.

The parties agree that Stella's predecessor, Patricia McCoy ("Ms. McCoy"),[1] permitted Zurick to park a trailer on her property at 728 Delaware Avenue in Fountain Hill (the "728 Property"), which Stella now owns.  The parties dispute whether Zurick established a prescriptive easement over the 728 Property parking lot by using it for 30 years to access his property at 734 Delaware Avenue ("the Zurick Property"), and having his family and friends do so, or whether Ms. McCoy's grant of a permissive easement for Zurick's occasional transportation of lawnmowing equipment over the 728 Property

_____

[1] Ms. McCoy is now deceased.

parking lot made all of Zurick's use of the parking lot permissive. Following a three-day hearing in March 2024, the trial court granted Zurick's declaratory judgment action and found Zurick acquired a prescriptive easement over a portion of the 728 Property parking lot for entry and access to Delaware Avenue, distinct from the permissive easement for transporting the lawnmowing equipment.[2] The court made the following findings of fact, which we summarize:

1) Zurick has been the sole owner of the Zurick Property since October 1990; the Zurick property abuts the 728 Property. *See Trial Court's Decision and Order*, 6/28/24, at ¶¶ 1-3.

2) Stella bought the 728 Property in 2020 from Patricia McCoy, who obtained title in 1996, upon her husband's death. *See id*. at ¶¶ 3-5.

3) An eight-foot-wide driveway on the Zurick property extends from Delaware Avenue to the garage at the rear of the Zurick property and widens into a parking area for three cars. *See id*. at ¶¶ 6-7.

4) Zurick's driveway and parking area run along the western edge of the 728 Property; Stella uses the western portion of its property, adjoining the Zurick Property, to access parking spots for its employees, visitors, and tenants. *See id*. at ¶¶ 8-9.

5) The apron/curb or gutter cut for access from Delaware Avenue to the Zurick Property and the 728 Property is continuous, and from October 1990 through August 2020, Zurick's driveway and the 728 Property formed a continuous, blacktopped surface. *See id*. at ¶¶ 10-11.

6) From October 1990 through August 2020, on an almost daily basis, Zurick and his family and guests, when driving to and from the Zurick Property from Delaware Avenue, drove over a portion

_____

[2] The court denied a second claimed prescriptive easement over a portion of the 728 Property for Zurick to access a shed on his property.

- 2 -

of the 728 Property parking lot, and parked in a way making obvious they had done so. *See id*. at ¶¶ 12-14.

7) Zurick never discussed his use of the 728 Property parking lot to access his property with Ms. McCoy or her agents prior to August 2020, and no one ever told Zurick or anyone connected to him to stop using a portion of the 728 Property parking lot to get to and from the Zurick property. *See id*. at ¶¶ 15-16.

8) Prior to Fall 1998, Zurick began parking a trailer in a parking spot on the 728 Property; later that year or early the next year, Ms. McCoy gave Zurick permission to do so, and in 2002 her property manager, Thomas Demshock, sent Zurick a letter affirming her grant of that permission. *See id*. at ¶¶ 17-18.

9) Shortly after Stella bought the 728 Property, its manager sent a letter to Zurick directing him to stop using the property, remove his trailer, and stop using the 728 Property parking lot to access his property. *See id*. at ¶ 19.[3]

10) Zurick's and his family's and guests' use of the 728 Property parking lot to enter and leave his property from 1990 to 2020 was open, without permission, adverse, hostile, and continuous. *See id*. at ¶¶ 24-28.

11) Zurick's and his family's and guests' use of a section of the 728 Property's parking lot to access a shed on Zurick's property was not open, notorious, adverse, without permission, and continuous for more than twenty-one years. *See id*. at ¶ 29.

The trial court concluded Zurick proved a prescriptive easement to enter and leave his property through the 728 Property parking lot, and that he, his family, and his guests used the easement area without permission. *See id*. at 5-6 (conclusions of law). The court further found Ms. McCoy granted Zurick

_____

[3] Zurick responded by moving his trailer, and Stella placed "Jersey blocks" in the parking lot to restrict Zurick's access to 728 Property's parking lot. *See* N.T., 3/22/24, at 12-14, 76.

- 3 -

permission to park a stationary, rarely-moved, storage trailer on the 728 Property's parking lot and that he had a permissive easement to transport that trailer across the 728 Property parking lot,[4] but Zurick's use of the 728 Property's parking lot to enter and leave the Zurick Property for thirty years without permission was a distinct, prescriptive easement. *See id*. at 6-8. Stella filed a notice of appeal and it and the trial court complied with Pa.R.A.P. 1925.

On appeal, Stella raises four issues for our review:

[1.] Did the trial court err in determining that the permissive use [of the 728 Property parking lot] was separate and distinct from the alleged adverse use by narrowly construing the extent of the permission based solely upon testimony of the subsequent use made by Appellee, as opposed to determining the extent based upon the words used, the intent of the promisor and the circumstances existing at the time?

[2.] Even if the uses [of the 728 Property parking lot] could be technically distinguished based upon the involvement of a trailer, should the court have nevertheless determined that where a property owner grants permission for a use that subjects her property to a materially greater burden than a substantially similar and overlapping use over a portion of the same area burdened, the related use is by the owner's indulgence, and not an adverse use against the owner's interest?

[3.] Even if the substantially similar uses [of the 728 parking lot] at issue are technically distinguishable, did the trial court err in its determination that the non-permissive use was sufficiently open, obvious and notorious when it involved the same vehicular access over the same area by the same vehicles as the permissive use and where Zurick offered no outward indication or disavowal of permissive use sufficient to put a reasonable owner under the

_____

[4] The trial court found this easement to transport a lawn mower to was "limited, sporadic, and seasonal[.]" *See* Trial Court Opinion, 12/20/24, at 8.

- 4 -

circumstances on notice that he was making hostile use contrary to the rights of the true owner?

[4.] Did the trial court abuse its discretion and/or commit an error of law in determining that Zurick's use of the drive[]way was adverse and hostile when the evidence of the surrounding circumstances indicates that the parties shared a mutually beneficial relationship, where neighborly accommodations were made[?]

Stella's Brief at 4-5 (capitalization standardized).

Stella's first issue asserts the trial court misconstrued the scope of Ms. McCoy's grant of permissive use of the 728 Property's parking lot to Zurick and should have viewed it as broad enough to encompass permission for Zurick and his family and friends to drive to and from Zurick's property across the 728 Property's parking lot in any vehicle. *See* Stella's Brief at 21-34.

A prescriptive easement is created by adverse, open, notorious, and continued and uninterrupted use for a period of twenty-one years. *See Thomas A. Robinson Family Limited Partnership v. Bioni*, 178 A.3d 839, 849 (Pa. Super. 2017) ("*Thomas A. Robinson*"). A party asserting the existence of an easement must demonstrate each element of the easement by clear and positive proof. *See Village of Four Seasons, Ass'n, Inc. v. Elk Mountain Ski Resort, Inc.*, 103 A.3d 814, 822 (Pa. Super. 2014). The scope of the use of an easement during the prescriptive period determines the scope of the easement obtained. *See Waltimyer v. Smith*, 556 A.2d 912, 914 (Pa. Super. 1989). Permissive use defeats the claim of a prescriptive easement. *See Village of Four Seasons*, 103 A.3d at 822. When no special

relationship exists between the parties, a sufficiently notorious use will be presumed to alert the owner to an adverse claim and require him to establish permissive use of his land. **See Waltimyer v. Smith**, 556 A.2d 912, 914 (Pa. Super. 1989).

When reviewing a trial court's determinations in a non-jury trial in a declaratory judgment action, the Court gives great deference to the trial court's factual findings. **See Tri-State Auto Auction, Inc. v. Gleba, Inc.**, 257 A.3d 172, 184 (Pa. Super. 2021). It is within the trial court's exclusive province to determine the weight to be assigned the testimony of witnesses; the court is free to believe all, part, or none of the evidence presented. **See Stokes v. Gary Barbera Enterprises, Inc.**, 783 A.2d 296, 297 (Pa. Super. 2001). Questions of law, however, are subject to *de novo* review. **See Tri-State**, 257 A.3d at 184.

Stella asserts Ms. McCoy granted Zurick permission in 1999, later memorialized in a 2002 letter from Demshock to Zurick, to park a mobile trailer at the rear of the 728 Property parking lot, and the permissive use necessarily involved the right to drive over the area Zurick claimed he adversely possessed, which Stella contends defeated the asserted prescriptive easement. **See** Stella's Brief at 21-22, 32-34, 39.[5] Stella acknowledges the

---

[5] Stella faults the trial court for stating the type of trailer was "immaterial" and asserts because Zurick did not buy a stationary storage trailer until 2002, Ms. McCoy's permission must have related to a mobile trailer. **See id**. at 34-38.

absence of case law addressing the scope of permission in a case involving a claim for a prescriptive easement. Accordingly, it cites case law addressing express easements, and asserts when an easement is ambiguous, the grantee shall have "reasonable and necessary" use of the right of way within the purpose of the easement, which requires the court to determine the intent of the parties to interpret the scope of the easement. ***See id***. at 39-45, citing ***Lease v. Doll***, 403 A.2d 558 (Pa. 1979). Stella also claims Zurick's testimony was "less than clear and convincing." ***See id***. at 23-34.

The trial court found that, prior to 2002, Zurick parked his storage trailer in a parking spot on the 728 Property and by letter in 2002, Demshock memorialized Zurick's permission to park his trailer there, establishing a permissive use that could not support an adverse possession claim. ***See id***. at 4. However, the court determined the right to park the trailer on the 728 property ***was a separate and distinct use*** from Zurick's daily travel back and forth over the 728 Property parking lot in other vehicles and, further, that moving the trailer to the 728 Property parking lot was "essentially a one-time event[.]" ***See*** Trial Court Opinion, 12/20/24, at 3-4. The court further found the permissive easement Ms. McCoy granted Zurick to park the trailer on the 728 Property parking lot did ***not*** include permission for daily use of that easement by Zurick, his family, and visitors, especially because Zurick rarely moved the trailer. It found that second, distinct, daily use of the 728 Property parking lot established all the elements of a prescriptive easement. The court

accordingly found two distinct easements, one permissive and one prescriptive. *See id*. at 5-7 (citing *Shaffer v. Baylor's Lake Ass'n*, 141 A.2d 583, 587 (Pa. 1958), for the proposition that multiple easements can exist as to the same property).

We find no error in the trial court's determination. The record supports the trial court's finding that Zurick's open, adverse, hostile, and continuous use of the 728 Property parking lot for thirty years daily to enter and leave his property from Delaware Avenue established a prescriptive easement, and the prescriptive easement thus established was distinct from the permissive easement Ms. McCoy granted Zurick to take a trailer over the same portion of the 728 Property parking lot as part of an occasional, seasonal grass-cutting business. *See Thomas A. Robinson*, 178 A.3d at 849; *Shaffer*, 141 A.2d at 583, 587. We thus find no merit to Stella's first issue.

Stella's second issue asserts the overlapping use of the easement for Zurick to drive over the property with the trailer and other vehicles should be considered use by the owner's indulgence and not an adverse use; Stella asserts Zurick's and his family's and friends' vehicular use did not constitute "a materially additional burden on the servient estate." *See* Stella's Brief at 53. Stella also cites the fact Demshock and Ms. McCoy told Zurick that although he could park his trailer on the 728 Property parking lot, he was not permitted to park in other spaces in the 728 Property parking lot. *See id*. at 53-56.

In its 1925 statement, Stella did not mention the owner's alleged indulgence or assert Zurick's daily use of the easement was not a materially additional burden.[6] Because those theories were not presented to the trial court, they may not be considered on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii); *Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. 2011).[7] The trial court rejected Stella's "overlapping use" assertion. It found the permissive easement to park the trailer, which was rarely moved, could not be confused with the daily use Zurick, his family, and friends made of the prescriptive easement. *See* Trial Court Opinion, 12/20/24, at 6-7.

We find no error in the trial court's denial of Stella's assertion that the permissive easement for the trailer made any use of the 728 Property parking lot permissive. Further, Stella's discussion of Zurick's friends' use of the

---

[6] The second issue Stella raised in its 1925(b) statement reads as follows:

Assuming that permission to park a trailer includes permission to make vehicular ingress and egress with the trailer, the [c]ourt committed an error of law and/or abused its discretion by finding that this permissive use and the alleged hostile use were legally distinguishable despite each use being vehicular ingress and egress over the same exact area with the only difference being that the permissive use involved the trailer in some way and the alleged hostile use did not.

*See* Stella's 1925(b) Statement, 11/1/24, at 2 (unnumbered).

[7] Even if this claim could be considered, it would not merit relief. There was a clear record basis for the trial court to conclude that thirty years of virtually daily use of the easement to enter and exit Delaware Avenue was a materially additional burden on the servient estate as compared to the occasional, seasonal use of the easement to transport lawn mowing equipment.

- 9 -

parking spots in the 728 Property parking lot is not relevant to our decision. The use at issue is an easement to travel back and forth across the 728 Property parking lot, not an easement to park in additional spaces in the 728 Property parking lot.

Stella's third and fourth issues assert Zurick's use of the 728 Property parking lot was not sufficiently open, obvious, and notorious because it involved passage over the same areas as the permissive use and because Zurick allegedly had the right to drive onto the property to perform lawn care services or had a "neighborly accommodation" to use a common driveway. *See* Stella's Brief at 56-57, 67-73. Stella further argues that Zurick's use was not sufficiently notorious because he never told anyone about his claim of right. *See id*. at 60-62.

The trial court rejected as unsupported speculation Stella's assertion of neighborliness and mutual accommodation. It found a thirty-year pattern of Zurick's, his family's, and his guests' pattern of driving to and from his property using the 728 Property's parking lot, and the positioning of their vehicles in a manner showing they had done so. *See* Trial Court Opinion, 12/20/24, at 7. The court also noted it had viewed the property in the company of counsel and concluded Zurick's use was open and obvious, and also credited Zurick's testimony no one had ever told him to stop using the easement. *See* Trial Court's Opinion, 12/20/24, at 7. The court further credited Zurick's testimony that he *walked* his lawnmower to the 728

Property to cut the grass and did not drive over the easement to do so. Additionally, although testimony showed Zurick used a small, open trailer to transport equipment to six or seven lawn-cutting jobs, the court found that use "limited, sporadic, and seasonal in nature." *See id*. at 8. As the court stated, "[w]hen repeatedly asked, Zurick (credibly) flat out denied ever receiving permission to drive on the 728 Property in connection with any lawn care services. *Id*.

We find no error in the trial court's rejection of these claims, which largely repeat Stella's other arguments. The record supports the trial court's credibility and factual determinations. We find the trial court did not abuse its discretion, and we affirm its decision.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/18/2025