J-A30024-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KENDRA BEST AND KEVIN BEST | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CRESHEIM VALLEY REALTY CO., L.P., AND SBG MANAGEMENT SERVICES, INC. | : | No. 28 EDA 2025 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered December 19, 2024
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 230401582

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.E.:  **FILED MARCH 16, 2026**

Cresheim Valley Realty Co., L.P., and SBG Management Services, Inc. (collectively, "Appellants"), appeal from the order entered in the Court of Common Pleas of Philadelphia County denying their motion for post-trial relief and entering judgment in favor of Kendra and Kevin Best (collectively, "Appellees")[1] in the amount of $48,250 following a non-jury trial. After careful review, we affirm.

Appellees initiated this landlord-tenant action against Appellants seeking recovery for alleged violations of the Philadelphia Lead Paint

_____

[1] Although both Appellees were parties to the original action, only Kendra Best appeared and testified at trial.

Disclosure and Certification Law[2] ("LPDCL"), the Fair Credit Extension

Uniformity Act[3] ("FCEUA"), and the Unfair Trade Practices and Consumer

Protection Law[4] ("UTPCPL"). The trial court accurately summarized the factual

and procedural history of the matter as follows:

> Siblings Kendra and Kevin Best [] have resided at 7200 Cresheim Road, Unit #C1, Philadelphia, PA 19119 since approximately July 2020. The building is owned by [Cresheim Valley] and managed by [SBG Management]. [Appellees] reside with Kendra's minor children, S.B. (date of birth May [] 2014) and J.B. (date of birth July [] 2010).
>
> [The parties] entered into separate lease agreements in 2020, 2021, and 2022. [Under] the 2020 and 2021 leases, [Appellees'] rent was $1,350 per month. [Under] the 2022 lease, their rent was $1,450 per month.
>
> Attached to both the 2020 and 2022 leases was a blank Certification of Lead Safe Status form ("lead safe certificate"). The only completed [] lead safe certificate that [Appellants] presented at trial was dated December 14, 2022. Ms. Best testified that the [Appellees] had never received the completed lead safe certificate introduced by [Appellants] at trial.
>
> In or around December 2022, due to ongoing and significant maintenance issues in the apartment[, unrelated to the lead safe certificate issue, Appellees] filed a complaint with the Pennsylvania Office of Attorney General Bureau of Consumer Protection. On January 10, 2023, [Appellants] assessed a $5,000 charge against [Appellees, added to their outstanding rent balance,] with the description "Legal Expenses—Retainer for services. Rcvd letter from Atty General." [Exhibit P-6.] The Attorney General initiated a civil enforcement action against

---

[2] Phila. Code., Chapter 6-800.

[3] 73 P.S. § 2270.1 et seq.

[4] 73 P.S. § 201-1 et seq.

[Appellants and other related defendants] on or about July 10, 2023.

At the same time, [Appellants] attempted to initiate eviction proceedings against [Appellees]. In Philadelphia, prior to commencing an eviction action, a landlord must participate in mandatory mediation. As a result, from January to May 2023, while the mediation was pending, [Appellees] placed their rent into an escrow account instead of paying it directly to [Appellants]. On July 12, 2023, the parties participated in a mediation that resulted in an eviction diversion program agreement [] that excused [Appellees] from paying rent from January 2023 until November 2023.

[Appellees] filed this landlord-tenant action on April 17, 2023. [The] court held a non-jury trial on October 28, 2024. [Appellees] presented the testimony of Kendra Best, Geoffrey Beauparlant, Regional Property Coordinator for SBG [Management], and Barbara Jablokov, Senior Manager in Accounting for SBG [Management]. [Appellants] presented the testimony of Philip Pulley, general partner of Cresheim Valley.

Following the conclusion of the trial, the court found in favor of [Appellees] and awarded $48,250 plus equitable relief. The court declared that [Appellees] were current on rent through October 2024, and [Appellants] could not seek any back rent or attempt to seek further reimbursement of the $5,000 legal fee.

Trial Court Opinion, 4/21/25, at 1-3 (footnote, record citations, and unnecessary capitalization omitted).

Appellants filed a motion for post-trial relief on November 11, 2024. On December 19, 2024, the trial court denied Appellants' post-trial motion and entered judgment in favor of Appellees. Appellants timely filed a notice of appeal. Both Appellants and the trial court have complied with Pa.R.A.P. 1925. *See* Pa.R.A.P. 1925(a), (b).

Appellants present the following issues for our review:

Whether the trial court, for the following reasons, [erred] as a matter of law and fact, in denying [Appellants'] post-trial motion under Pa. R.C.P. 227.1(a), and thus entering judgment in favor of [Appellees] and against [Appellants] in the amount of $48,250.00 [where]:

1. The trial court denied [Appellants'] motion for judgment on the pleadings and allowed [Appellees] to present evidence where [Appellees] did not file a timely reply to new matter endorsed with a notice to plead, and therefore the averments of the new matter were deemed admitted;

2. The trial court denied [Appellants'] motion for judgment on the pleadings and allowed [Appellees] to present evidence where [Appellees] filed a clearly insufficient "Answer to New Matter" which contained only general denials and denials of well-pleaded facts as "conclusions of law," whereas the averments of fact in the new matter were deemed admitted[;]

3. The trial court improperly found that [Appellees] were entitled to an abatement of rent under the City of Philadelphia Lead Law, City Ordinance No. 180936;

4. The trial court failed to properly interpret the integration clause in the lease agreement between the parties;

5. The trial court improperly found that [Appellants] had violated the Fair Credit Extension Uniformity Act (73 P.S. § 2270.1 et seq) and that therefore [Appellees] were entitled to treble damages for violations of the Unfair Trade Practice and Consumer Protection Law (73 P.S. § 2270.5);

6. The trial court improperly found that SBG Management Services, Inc. was the [proper] party defendant[; and]

7. There was no basis in the evidence or testimony for an award of $48,250.00 to [Appellees].

Appellant's Brief, at 6-7 (formatting altered; issues reordered for ease of disposition; unnecessary capitalization omitted).

Appellants challenge the judgment entered in favor of Appellees following the parties' non-jury trial.

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review, the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

*Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare*, 299 A.3d 937, 956 (Pa. Super. 2023) (brackets and citation omitted).

In their first and second issues, Appellants claim that the trial court erred in denying their motion for judgment on the pleadings.

> Our standard of review of a ruling on a motion for judgment on the pleadings is *de novo*, and our scope of review is plenary. ... Judgment on the pleadings is proper only where the pleadings evidence that there are no material facts in dispute such that a trial by jury would be unnecessary.
>
> Like the trial court, we must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted. Grant of a motion for judgment on the pleadings is proper only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Boyle v. Meyer*, 344 A.3d 839, 844 (Pa. Super. 2025) (citations and quotation marks omitted).

We begin by recounting the relevant background. On April 17, 2023, Appellees filed a complaint against Appellants asserting claims for alleged

violations of the LPDCL, FCEUA, and the UTPCPL. In response, Appellants filed preliminary objections on June 6, 2023, which the court overruled on October 5, 2023. On October 25, 2023, Appellants filed an answer and purported new matter, properly endorsed with a notice to plead within twenty days. **See** Pa.R.C.P. 1026(a).

On July 2, 2024, Appellants filed a motion for judgment on the pleadings, in which they argued, *inter alia*, that the facts pleaded in their new matter were not merely denials of the averments made in the complaint, but rather were defenses to Appellees' claims, and that Appellees' failure to reply to the new matter permitted the court to deem the averments as admitted. Later that same date, Appellees filed a reply to Appellants' new matter, in which they denied the averments either generally or as conclusions of law. On July 8, 2024, Appellees filed a response and memorandum in opposition to Appellants' motion for judgment on the pleadings, in which they argued that Appellants' new matter did not require a responsive pleading because the averments consisted of conclusions of law, denials of the facts set forth in the complaint, and irrelevant factual allegations that did not constitute affirmative defenses to their claims. Upon considering Appellants' motion and Appellees' response, the trial court entered an order denying Appellants' motion for judgment on the pleadings on July 12, 2024.

Under our Rules of Civil Procedure, "[a] party may set forth as new matter any other material facts which are not merely denials of the averments

in the preceding pleading." Pa.R.C.P. 1030(a). However, where the new matter asserted in a defendant's answer "contains no affirmative defenses[,]" and instead consists "entirely of conclusions of law or negative pleadings, [i.e.,] factual denials of the averments in [the plaintiff's] complaint[,]" it is not necessary for the plaintiff to file a responsive pleading. *Ritmanich v. Jonnel Enterprises, Inc.*, 280 A.2d 570, 576 (Pa. Super. 1971) (citation omitted). "Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication." Pa.R.C.P. 1029(b). Accordingly, "[t]he rule in Pennsylvania is that averments of fact contained in new matter require a specific denial, and the failure to do so constitutes an admission of those facts." *Cooper v. SGYS St. Ives, LLC*, 333 A.3d 1046, 1056 (Pa. Super. 2025) (citation omitted).

Appellants claim that "[t]he facts pleaded in the new matter are not merely denials of the averments of the complaint but are defenses to the claims made by [Appellees]." Appellants' Brief, at 19 (unnecessary capitalization omitted). Appellants contend that the answer to new matter eventually filed by Appellees consisted of general denials that have the effect of admissions under Pa.R.C.P. 1029(b). *See id.* at 21. Appellants further contend that because Appellees "improperly denied averments of fact as conclusions of law[,]" the facts in question are likewise deemed admitted. *Id.* at 22 (emphasis and internal quotation marks omitted). Appellants then

- 7 -

summarily conclude that "[w]ith such facts admitted by [Appellees], their causes of action must fail and their [c]omplaint must be dismissed." **Id.** at 22.

Appellants are not entitled to relief. The purported new matter asserted by Appellants did not allege facts or raise defenses that required specific denials in a responsive pleading, and they have not even attempted to demonstrate otherwise. **See Ritmanich**, 280 A.2d at 576. Rather, Appellants baldly assert that the trial court erred in determining that their purported new matter did not require responsive pleadings and in declining to deem the facts alleged in their purported new matter admitted. **See Commonwealth v. Wright**, 314 A.3d 515, 523 (Pa. Super. 2024) ("It is not [this Court's] duty or our prerogative to develop arguments for an appellant."). Moreover, Appellants have not even attempted to demonstrate how they would have been entitled to entry of judgment on the pleadings if the factual averments contained in their purported new matter had been deemed admitted by the trial court. Therefore, based upon our own review of the pleadings, we discern no error by the trial court in denying Appellants' motion for judgment on the pleadings.

In their third issue, Appellants claim the trial court erred in finding that Appellees are entitled to an abatement of rent pursuant to the LPDCL. "An ordinance, like a statute, must be construed, if possible to give effect to all of its provisions." **Cooper**, 333 A.3d at 1051 (brackets and citation omitted).

Philadelphia City Council enacted the LPDCL "to provide an educational tool which will assist the Department of Health in identifying, reducing and combating lead poisoning in Philadelphia children." Phila. Code, at § 6-801(8). Since its inception in 1995, the LPDCL has been amended several times, most recently in 2020. Section 6-803 imposes specific lead disclosure obligations on lessors of "Targeted Housing," which is defined under the current version of the ordinance, in pertinent part, as "property built before March 1978 (even if renovated thereafter) that is currently used as housing[.]" Phila. Code, at § 6-802(14) (effective October 1, 2020).[5] Appellees brought their LPDCL claim pursuant to section 6-803(3), which provides as follows:

**§ 6-803. Lead Disclosure Obligation.**

(3) *Rental Protections*.

(a) No rental license under Chapter 9-3900 shall be issued or renewed to a lessor with respect to any Targeted Housing, and no lessor shall enter into a lease agreement with a lessee to rent any Targeted Housing, or a unit in such Targeted Housing, unless (.1) he or she provides the lessee with a valid certification prepared by a certified lead inspector stating that the property is either lead free or lead safe; (.2) the lessee acknowledges receipt of the certification by signing a copy; (.3) the lessor has provided to the Department of Public Health a copy of such certification. For purposes of this subsection (a), a lease agreement shall include a renewal of a lease

_____

[5] The iteration of the ordinance in effect when the parties entered into the 2020 lease excluded residential property built before March 1978 from the definition of Targeted Housing unless, *inter alia*, "children aged six [] and under" resided in the dwelling unit "during the lease term." **Id.** 2012 Edition, at § 6-802(12).

agreement, including an automatic renewal, provided that, no certification shall be required upon renewal of a lease if a prior certification provided to the lessee remains valid, as provided for at subsection 6-802(15).

\* \* \*

(b) A valid certification that a property is lead safe under this section shall state that the certified lead inspector determined that the property or unit was free of any Deteriorated Paint, and that interior dust samples were collected in compliance with EPA regulations, including 40 C.F.R. § 745.227 and any amendments or successor regulations, were tested and were found not to contain Lead-Contaminated Dust as defined in this Chapter. The certification shall be accompanied by a copy of the corresponding laboratory results of wipe tests for lead-contaminated dust. Any corrective action taken in order to qualify the property for such certification shall be performed in compliance with applicable laws. Expenses relating to obtaining any lead safe or lead free certification required by this Section 6-803 shall be the responsibility of the lessor.

Phila. Code, at § 6-803(3). The LPDCL also provides the remedies a lessee is entitled to recover for violations of section 6-803, which include, *inter alia*, exemplary damages of up to $2,000, abatement and refund of rent for the period of noncompliance, and attorney's fees and costs. ***See id.*** at § 6-809(3)(c)-(e).

Appellants contend that the court erred in granting Appellees relief on their LPDCL claims because "[a]t the time of the initial lease signing, Cresheim Valley was certified by the City as [lead free], as appears on the rental license introduced into evidence by [Appellants]." Appellants' Brief, at 33-34.

- 10 -

Appellants further contend that Appellees "were provided with and acknowledged receipt of all [] necessary documents regarding the [l]ead status of the apartment." *Id.* at 24.

The trial court addressed this issue as follows:

Here, there is no dispute that the subject property was built before 1978, and that children under the age of [six] lived in the property for some portion of the 2020 lease at issue. Thus, the property satisfies the definition of targeted housing.

Until at least January 2024, [Appellees] had not received a completed lead safe certificate. [Appellants] apparently received a completed certificate on December 14, 2022, but Ms. Best credibly testified that [Appellees] never received it before bringing this action. [Appellants] did not present any evidence to rebut Ms. Best's testimony, as none of [Appellants'] witnesses had any knowledge of the completed certificate being presented to [Appellees]. Because [Appellants] never provided a completed lead safe certificate to [Appellees], [Appellees] were entitled to a refund of rent paid, for the time periods discussed *infra*.

Under the previous iteration of the [ordinance], in effect prior to October 1, 2020, targeted housing was limited to where children under the age of [six] resided during the lease term. Ms. Best's youngest child, S.B., who did not turn seven until May [] 2021, was six or under during the 2020 lease term. Accordingly, [Appellants were] required to provide [Appellees] with a completed lead safe certificate for [the July 2020 to June 2021] lease term.

[Appellants] merely provided a blank . . . lead safe certificate to [Appellees] in connection with this lease term. [*See* Exhibit P-1.] Although [Appellees electronically] signed this form, the form had not been prepared by a certified lead inspector (or anyone for that matter). [*See* Phila. Code, at § 6-803(3).] Therefore, [the] court properly determined that [Appellees] were entitled to a refund of rent paid for the entire 2020 lease term, totaling $16,200 (twelve months of rent at $1,350 per month).

The current iteration of the [ordinance] redefined targeted housing to eliminate reference to the age of the minor children.

Accordingly, [Appellants were] obligated to provide completed lead safe certificates to [Appellees] starting in 2022, even though S.B. was older than [six] during this lease term.

The lead safe certification attached to the [] 2022 lease was completely blank. [*See* Exhibit P-3.] Moreover, although [Appellants] received a completed lead safe certificate during this lease term, [Appellants] never provided the completed certificate to [Appellees]. Accordingly, [the] court determined that [Appellees] were entitled to a refund of rent paid from July 2022 to December 2022, totaling $8,700 (six months of rent at $1,450 per month).

[Appellees] did not seek a rent refund from January 2023 to November 2023, even though [Appellants] failed to provide the certificate, because [Appellees] were not obligated to pay rent for that period pursuant to the eviction diversion agreement[.] Following the expiration of the agreement, [Appellees] were entitled to a refund of rent from November 2023 to January 2024, as the [ordinance also] applied to that time period. Thus, [the] court awarded a refund of rent for that period, totaling $4,350 (three months of rent at $1,450 per month).

Trial Court Opinion, 4/21/25, at 5-7 (record citations, headings, and unnecessary capitalization omitted). We agree.

At trial, Appellees presented both testimonial and documentary evidence to establish that Appellants had not provided them with the certifications required by the LPDCL when they entered into their 2020 and 2022 lease agreements. *See* N.T. Trial, 10/28/24, at 16, 21; Exhibits P1, P3. Appellants did not introduce any evidence to refute or contradict Appellees' allegation or otherwise show that Appellees were provided with a valid lead-safe or lead-free certification during the time periods in question.

Rather, Appellants mistakenly suggest that because the City of Philadelphia issued Cresheim Valley a rental license, "the property was

certified as lead-free at the inception of the lease upon which [Appellees] base their cause of action," and therefore, Cresheim Valley was somehow absolved of its duty to provide either a lead-free or lead-safe certification to Appellees in accordance with section 803(3) of the LPDCL. This argument lacks merit. The mere fact that the City of Philadelphia issued a rental license for a property is insufficient to satisfy the certification requirements imposed by section 6-803(3), as the rental license and lead certification requirements are separate and distinct regulatory obligations that a landlord must independently fulfill. **See** Phila. Code, at § 9-3902(1)(a) (prohibiting collection of rent "unless a valid rental license has been issued for the property"). While the City presumably considers a property's lead inspection compliance prior to issuing a rental license, the issuance of a license does not automatically satisfy a lessor's independent duty to provide a lessee with a valid lead-safe or lead-free certification as prescribed and defined by the ordinance. **See** Phila. Code, at § 6-803(3)(b) (delineating the contents of a "valid certification"). Appellants' suggestion that obtaining a rental license is somehow a substitute for providing a lessee with a valid certification is contrary to the mandates of the ordinance. Therefore, Appellants are not entitled to their requested relief.

Relatedly, in their fourth issue, Appellants claim the trial court erred in finding the integration clause contained in the 2022 lease agreement to be irrelevant to the relief sought by Appellees under the LPDCL. Because the interpretation of a lease agreement is a question of law, our standard of review

is *de novo*, and our scope of review is plenary. ***See Tri-State Auto Auction,***

***Inc. v. Gleba, Inc.***, 257 A.3d 172, 184 (Pa. Super. 2021).

> [W]here a written lease contains an integration clause, the lease, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony nor prior written agreements, or other writings, are admissible to explain or vary the terms of the lease.

***Id.*** at 185 (quotation marks, brackets, and citation omitted).

Appellants' argument is premised upon the following clause contained

in the parties' 2022 lease agreement:

> 27. **Representations, changes in Lease.** Tenant has read this Lease. All promises made by the Landlord are in this Lease. There are no others. This Lease may be changed only by an agreement in writing signed by and delivered to each party. Any bill, statement, approval, consent, permission or notice must be in writing.

Exhibit P3. Appellants contend that because the parties' 2022 lease agreement

contained the above clause, the 2022 lease "is the only operative agreement"

that the court should have considered for purposes of Appellees' LPDCL claims.

Appellants' Brief, at 31. Appellants conclude that the trial court erred in

permitting "[a]ny evidence or testimony relating to [Appellees'] tenancy that

predated the commencement of the 2022 [l]ease[.]" ***Id.***

The trial court addressed this claim as follows:

> [Appellants contend] that [the] court did not enforce the integration clause contained in the 2022 lease. This argument defies common sense. It is undisputed that [Appellants] issued a new lease to [Appellees] at the commencement of every lease term. Yet, [Appellants contend] that an integration clause in the 2022 lease forecloses [Appellees'] recovery under any prior lease. The integration clause may be read to supersede any other

agreements between [Appellees] and [Appellants] leading up to and with respect to the 2022 lease term, but it cannot be read to bar recovery under earlier (and separate) contracts. [Appellees], seeking relief under the 2020 and 2022 leases, presented unique evidence of violations pursuant to each lease independently. Thus, the court properly rejected the integration clause argument.

Trial Court Opinion, 4/21/25, at 13 (unnecessary capitalization and record citation omitted). We agree.

Appellants are not entitled to relief, as they failed to present any cogent argument to demonstrate how the trial court failed to enforce the integration clause or how the integration clause has any bearing on Appellees' right to recover under the LPDCL. Therefore, we discern no error by the trial court in rejecting this argument.

In their fifth issue, Appellants claim the trial court erred in finding that Appellees are entitled to an award of treble damages under the FCEUA and the UTPCPL. Where an issue "implicates the legal standard for an award of treble damages under the UTPCPL, our standard of review is *de novo*[,] and our scope of review is plenary." ***Nexus Real Estate, LLC v. Erickson***, 174 A.3d 1, 4 (Pa. Super. 2017) (citation omitted).

The FCEUA "establishes what shall be considered unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." 73 P.S. § 2270.2. Under the FCEUA, a "debt" is defined as "[a]n actual or alleged past due obligation, claim, demand, note or other similar liability of a consumer to pay money[.]" 73 P.S. § 2270.3. The FCEUA further defines a "creditor" as "[a] person, including agents, ... to whom a

- 15 -

debt is owed or alleged to be owed[,]" and a "debt collector" as "[a] person ... acting on behalf of a creditor, engaging or aiding directly or indirectly in collecting a debt owed or alleged to be owed a creditor or assignee of a creditor." *Id.* The enforcement provision of the FCEUA provides "[i]f a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the [UTPCPL]." 73 P.S. § 2270.5.

A trial court's authority to award treble damages for a violation of the UTPCPL is derived from 73 P.S. § 201-9.2(a). *See Dwyer v. Ameriprise Financial, Inc.*, 313 A.3d 969, 978 (Pa. 2024). "Although the [UTPCPL] does not provide any standards to guide the trial court in exercising its discretion to award (up to) treble damages, the court's discretion must be exercised within the constraints of the legislative goals evinced by the statute." *Id.* (footnote omitted).

> Without treble damages, many private plaintiffs would have claims too small to justify the burdens of bringing a private cause of action. Treble damages under Section 9.2 are central to this remedial purpose and operate in tandem with the private action to effectuate the legislative goals of the CPL. The availability of treble damages, as well as attorneys' fees, under Section 9.2, incentivizes the private enforcement of the CPL, which serves the overarching legislative goal of eradicating unfair and deceptive trade practices.
>
> * * *
>
> The trial court's discretion with respect to treble damages is not limitless, but should focus upon the presence of intentional or reckless, wrongful conduct, as to which an award of treble damages would be consistent with, and in furtherance of, the

remedial purposes of the CPL. This directive to the trial court—to focus upon the presence of intentional or wrongful conduct—serves the deterrent purpose of the CPL.

*Id.* at 980-81 (quotation marks, footnotes, and brackets omitted).

Appellants contend that their assessment of $5,000 against Appellees is not actionable under the UTPCPL because they incurred the expense defending the action brought by the Attorney General on behalf of the Appellees and passing their legal expenses onto Appellees "is expressly permitted by the lease agreement between the parties." Appellants' Brief, at 39. Appellants aver that the trial court "incorrectly characterized [their] actions as retaliatory" where "[t]he evidence showed otherwise." *Id.* at 36.

Appellants' attempt to rationalize their assessment of the $5,000 expense against Appellees as permitted under the terms of the lease is unavailing. *See* Appellants' Brief, at 36. To support their argument, Appellants rely upon the following clause contained in the 2022 lease agreement:

> 44. **Attorney Fees and Costs.** The Tenant will be responsible for any court costs and/or attorney's fees incurred for the collection of any delinquent rent, added rent, or any other payment due under the terms of this Lease or resulting from the enforcement of any other provisions of this Lease. In addition, Tenant will be responsible for any administrative fees or expenses, which shall be a minimum of $250.00 once any judicial action is taken.

Exhibit P3. At trial, the court questioned defense counsel extensively on this issue, and counsel failed to identify any specific provision within this clause that would permit Appellants to assess a $5,000 charge against Appellees for the legal fees Appellants incurred in retaining counsel to defend an action

brought by the Attorney General. *See* N.T. Trial, 10/28/24, at 150-157. In their brief, Appellants similarly fail to present a cogent argument on the issue.

Furthermore, Appellants baldly assert that under section 2270.3 of the UTPCPL, "the request for payment of legal fees and costs permitted by the lease" does not constitute a "debt" and that Cresheim Valley and SBG Management do not constitute "creditors" or "debt collectors." Appellants' Brief, at 37-38. However, the evidence presented by Appellees at trial established that on behalf of Cresheim Valley, SBG Management added a $5,000 assessment to the outstanding balance reflected on Appellees' online tenant portal, and that when Appellees submitted a rent payment on at least one occasion, part of the payment was applied to satisfy the outstanding $5,000 assessment. *See* Exhibits P6, P7. Accordingly, the $5,000 assessment, Cresheim Valley, and SBG Management fall within the definitions of debt, creditor, and debt collector under the statute. *See* 73 P.S. § 2270.5.

Moreover, the trial court aptly explained its decision to award treble damages as follows:

> [I]t is plain and clear that [Appellants] retaliated against [Appellees] in a manner that violated [the] FCEUA and UTPCPL. The conduct of [Appellants] shocks the court's conscience. For several years, [Appellees] lived in substandard conditions, necessitating numerous complaints to management. After [Appellants] failed to satisfactorily address those complaints, [Appellees] filed a complaint with the Pennsylvania Attorney General. The Attorney General, in its discretion and after investigation, could have elected not to pursue any formal action against [Appellants]. But the Attorney General did pursue formal action against [Appellants]—and the action is still pending. It is completely outside the bounds of comprehension that [Appellants]

could believe [they were] justified in passing on the legal expenses incurred to [Appellees]. [Appellants] acted in bad faith when [they] sought to impose the cost of [their] own apparent substandard property management upon [Appellees].

Accordingly, [the] court properly exercised its discretion when it found that [Appellants] improperly charged [Appellees] in connection with the Attorney General's investigation[.]

Trial Court Opinion, 4/21/25, at 10 (unnecessary capitalization and footnote omitted). We discern no error or abuse of discretion by the trial court. Accordingly, Appellants are not entitled to relief on this issue.

In their sixth issue, Appellants claim the trial court erred in determining that SBG Management is a proper party to this landlord-tenant action. Appellants aver that the evidence adduced at trial "clearly show[s] that [Appellees] incorrectly named SBG Management Services, Inc.[] as the entity that manages and operates the subject building, identifying it as a Delaware corporation." Appellants' Brief, at 40. Appellants conclude that because they proved Appellees misidentified SBG Management as a defendant, "no award should have been made against it." *Id.*

In their brief, Appellants' discussion of this issue is limited to three sentences and devoid of any citation to legal authority to support their argument. "Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review that claim is waived" in accordance with Pa.R.A.P. 2119. *Heffelfinger v. Shen*, 342 A.3d 711, 721 (Pa. Super. 2025)

(brackets and citation omitted). Accordingly, Appellants waived this issue by failing to properly develop their argument.

Moreover, the trial court succinctly dispelled with the merits of Appellants' claim:

> [Appellants] assert that SBG Management Services, Inc. is not a proper party to this action, in direct contradiction to the testimony that their own representatives offered at trial. At trial, Phillip Pulley, general partner of Cresheim [Valley], testified that SBG Management Services, Inc. and SBG Management Services PA, Inc. are the same corporation. [**See** N.T. Trial, 10/28/24, at 123]. Counsel for [Appellants] confirmed that the entity is the same corporation and merely changed its name. [**See id.** at 126]. SBG Management Services, Inc. is the property manager for the building and is a proper party.

Trial Court Opinion, 4/21/25, at 12.

In their seventh issue, Appellants claim the trial court lacked an evidentiary basis to award Appellees damages in the amount of $48,250. However, Appellants failed to present any corresponding argument section or analysis of this issue in their brief. **See** Pa.R.A.P. 2119(a) (the argument section of an appellant's brief "shall be divided into as many parts as there are questions to be argued"); **see Heffelfinger**, 342 A.3d at 719 (citation omitted). Appellants have also waived this issue under Rule 2119.

For the foregoing reasons, Appellants are not entitled to relief, and we affirm the trial court's order denying their motion for post-trial relief and entering judgment in favor of Appellees.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>3/16/2026</u>